## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

SANDRA E. FLUCK,     )
             )
   Plaintiff,     )
             )   C. A. No. 06-188-GMS
   v.         )
             )
BELLA VISTA DEVELOPMENT, LLC, )
a Virginia corporation, BELLA VISTA )  TRIAL BY A JURY DEMANDED
TOWNHOME CONDOMINIUM   )
ASSOCIATION, INC., a Delaware   )
Corporation, RESORT REALTY GROUP, )
INC.,a Delaware corporation, WILLIAM J. )
MITCHELL, individually, and WAYNE )
MITCHELL, individually,    )
             )
   Defendants.    )

## DEFENDANT RESORT REALTY GROUP, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

FERRY, JOSEPH & PEARCE, P.A.

/s/Robert K. Pearce
ROBERT K. PEARCE, ESQ. (I.D. No. 191)
THOMAS R. RIGGS, ESQ. (I.D. No. 4631)
824 Market Street, Suite 904
Wilmington, DE 19899
(302) 575-1555
rpearce@ferryjoseph.com
Attorneys for Defendant
Resort Realty Group, Inc.

Dated: June 21, 2007

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      1.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      2.     Resort had no duty to inspect the Property or to warn Plaintiff of defects, and is entitled to summary judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      3.     Resort had no actual knowledge of any hidden defects on the Property. . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

i

## **TABLE OF AUTHORITIES**

**Cases:**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Argoe v. Commercial Square Apartments LP*, 745 A.2d 251 (Del.Super.1999) . . . . . . . . . . 11-12

*Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518 (3d Cir.1999) . . . . . . . . . . 5

*Christopher v. McGuire*, 169 P.2d 879 (Or. 1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Commission v. Estate of Bosch*, 387 U.S. 456, 465 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hailed v. Dundee, Inc.*, 272 F.Supp. 1, 7 (D.C.Del. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110 (N.J. 1993). . . . . . . . . . . . . . . . . . . . . . . . . 7-9

*Jarr v. Seeco Construction*, 666 P.2d 392 (Wash.App.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Johnson v. Chupp*, 2003 WL 292168 (Del.Super) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Masick v. McColly Realtors, Inc.*, 858 N.E.2d 682 (Ind.App.2006) . . . . . . . . . . . . . . . . . . . . 9-10

*Meyer v. Tyner*, 273 A.2d 364 (N.Y.A.D.2 Dept 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*O'Connor v. Diamond State Telephone Company*, 503 A.2d 661 (Del. Super.1985) . . . . . . . . . . 6

*Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165,
1167 (3d Cir.1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Rhudy v. Bottlecaps*, 830 A.2d 402 (Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rowland v. Christian*, 443 P.2d 561, 656-68 (Cal. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*White v. Rick Canup Realtors, Inc.*, 2000 WL 621263 (Tex.App-Amarillo) . . . . . . . . . . . 10-11

**Rules:**
Federal Rule of Civil Procedure 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Other Sources:**
Restatement (Second) of Torts, §328E . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

## NATURE AND STAGE OF THE PROCEEDINGS

On March 20, 2006, Plaintiff Sandra E. Fluck filed a Complaint seeking damages from ReMax Realty Group, among others, for personal injuries she allegedly suffered on or about June 27, 2004. Plaintiff filed a Motion for Default Judgment against ReMax Realty Group, which was withdrawn on August 30, 2006. On or about June 16, 2006, Plaintiff filed an Amended Complaint adding Defendant Wayne Mitchell. On or about December 19, 2006 Plaintiff filed a stipulation to Amend the Amended Complaint to substitute Resort Realty Group, Inc as a Defendant in place of ReMax Realty Group. Defendant Resort Realty Group, Inc. filed a motion to dismiss the Second Amended Complaint for insufficient service of process on February 20, 2007, which is still pending. This is Defendant Resort Realty Group, Inc.'s Motion for Summary Judgment.

1

## SUMMARY OF ARGUMENT

I.    Resort had no duty to inspect the Property or to warn Plaintiff of defects,

and is entitled to summary judgment.

II.    Resort had no actual knowledge of any hidden defects on the Property.

**FACTS**

Plaintiff Sandra E. Fluck attended an open house held at Bella Vista Townhome and

Condominium Development (hereinafter, "the Property") on June 27, 2004, where she allegedly

fell on a paver step at Unit 5 of Building A ("Unit 5"), and sustained injuries for which she

subsequently brought the instant action. *See* Amended Complaint, ¶10-DI-12.; Deposition of

Wayne Mitchell, May 11, 2007, pp-16, A-7.[1]  At the time of the incident, Defendant Bella Vista

Development, LLC, a Virginia corporation, ("Bella Vista LLC") was the operator and manager of

Bella Vista Townhomes.  WaM-6-7, A-3-4.  The Property was owned by CHS Associates.  *See*

*Certificate of Compliance and/or Occupancy,* dated May 20, 2004, A-21; *Exclusive Listing*

*Agreement between Defendant Remax Realty Group and CHD Associates*, dated October 14,

2002, A-22.  Defendant Wayne Mitchell was a one-third owner of Bella Vista LLC, and was

responsible for its day-to-day operations.  WaM-5-6, A-2-3.  Wayne Mitchell, and his son,

William Mitchell, were also independent real estate agents for Defendant Resort Realty Group

("Resort"), which was the listing broker for the Property.[2]  WaM-13, A-6; Affidavit of Robert

Reed, dated June 19, 2007, attached hereto as Exhibit A; *Exclusive Listing Agreement between*

*Defendant Remax Realty Group and CHD Associates*, A-22.

As part-owner of Bella Vista LLC, Wayne Mitchell was responsible for the sales,

construction, and daily maintenance of the Property.  WaM-7-8, A-4-5.  When the Property was

being constructed, it was determined that, due to the height of the front porch, a step would be

---

[1]Deposition transcripts are hereinafter referred to as follows: Wayne Mitchell- WaM-__,
A-__;  William Mitchell- WiM-__, A-__..

[2]Defendant Resort Realty Group, Inc. did business at the time of the incident as Remax
Realty Group.

needed between the ground and the front porch of Unit 5 in order to meet the Sussex County

Building Code. WaM-45, 49-50, A-8, 12-13. Prior to a certificate of occupancy being issued by

the Sussex County Building Code Department, Wayne Mitchell, in his role as part owner of Bella

Vista LLC, decided to use pavers to build the required step rather than concrete. WaM-47-48,

A-10-11. After the paver step was installed at Unit 5, the building was inspected and passed

inspection, and a certificate of occupancy for Unit 5 was issued on May 5, 2004. WaM-45-50,

A-8-13; WiM-24, A-18; *Certificate of Compliance and/or Occupancy,* A-22. Plaintiff alleges

that the paver step was defective because it was not as wide as the edge of the front porch. *See*

Report of Lawrence C. Dinoff dated April 30, 2007, A-24. Significantly, Resort was not

involved in the design, construction, or maintenance of the Property. WaM-68, A-15; Affidavit

of Robert Reed, Exhibit A, ¶5. Nor did Resort participate in the decision to install the paver step

or porch at issue, or in any other decisions regarding the construction and maintenance of the

Property. WaM-67-68, A-14-15.

Wayne and William Mitchell scheduled and set up an open house at the Property to be

held on June 27, 2004 at which the Plaintiff was allegedly injured. WaM- 68-69, A-15-16.

Neither Wayne nor William Mitchell spoke to anyone at Resort prior to scheduling or conducting

the open house. *Id.*; WiM-42-43, A-19-20; Affidavit of Robert Reed, Exhibit A, ¶4. Other than

being the listing broker for the Property, Resort did not in any other way participate in the

organization, planning, or management of the open house, and at no time agreed to inspect the

Property prior to the open house or keep the Property in repair. Affidavit of Robert Reed,

Exhibit A, ¶¶4,6.

4

## **ARGUMENT**

### 1.    **Standard of Review**

Fed.R.Civ.P. 56(c) provides, in pertinent part, that a court may grant summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  In determining whether summary judgment is warranted, the Court views the record and draws inferences in a light most favorable to the non-moving party. *See Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.,* 180 F.3d 518, 521 (3d Cir.1999).  If a non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which it bears the burden of proof at trial, there is no genuine issue of a material fact and thus the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

### 2.    **Resort had no duty to inspect the Property or to warn Plaintiff of defects, and is entitled to summary judgment.**

As set forth previously, Resort was simply the listing broker for the Property, and was never in actual possession or control of the Property.  Moreover, Resort had no contractual obligation to inspect the Property prior to the open house, nor in any other way to maintain or repair defects on the premises.  Accordingly, Resort owed no duty to inspect the Property for defects or to warn potential buyers of possible dangers on the property, and is entitled to summary judgment in its favor.

Federal courts sitting in diversity cases are required to apply the substantive law of the state whose laws govern the action. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 (1938).  In

5

cases where the state's highest court has not considered the precise question to be answered, the

federal court is called upon to predict how the state court would resolve the issue should it be

called upon to do so. *Commission v. Estate of Bosch*, 387 U.S. 456, 465 (1967); *Pennsylvania*

*Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir.1981). In Delaware,

duty is an issue of law that must be decided by the court. *O'Connor v. Diamond State Telephone*

*Company*, 503 A.2d 661, 663 (Del. Super.1985) Undersigned counsel has been unable to find

any Delaware case law directly addressing the issues at hand, although the Superior Court has

discussed the duty owed by a buyer's agent to his client when touring a property. In *Johnson v.*

*Chupp*, 2003 WL 292168 (Del.Super.), the plaintiffs had signed an agreement to purchase a

parcel of land, and, prior to settlement, were inspecting the property with their real estate agent.

*Id.* at *1. One of the plaintiffs fell into an open well that had been hidden from view by

underbrush. *Id.* The plaintiffs subsequently filed suit against, *inter alia*, their real estate agent,

alleging that he had failed to inspect the property. *Id.* at *2. The court granted the defendant's

motion for summary judgment, holding that a buyer's agent has no duty for the safety of the

buyer while on a seller's property. *Id.* In so ruling, the court recognized that some jurisdictions

have imposed an affirmative duty on a seller's agent to inspect a property and either make it safe,

or warn invitees of any dangerous conditions, while other jurisdictions have declined to impose

such a duty. *Id.* The *Chupp* court concluded that none of those cases applied to the facts before

it since a buyer's agent has no more control over a property than the buyers themselves. *Id.*

However, a discussion of those decisions is appropriate in the instant case since they each deal

with facts analogous to those at bar. Moreover, as will be discussed more fully herein, it is

respectfully submitted that a careful analysis of the rationale underlying those decisions leads to

the conclusion that Delaware should follow those jurisdictions that have held that a listing broker

has no duty to inspect a property prior to an open house and either repair or warn invitees of

dangers on the property.

In *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110 (N.J. 1993)(Clifford, J.,

concurring)(Garibaldi, J., dissenting), the New Jersey Supreme Court was faced with facts

strikingly similar to those in the instant case. In *Hopkins*, the plaintiff was injured when she fell

on a step during an open house tour. She alleged that the step was camouflaged because it

connected two floors that were covered in the same pattern vinyl, and argued that the broker who

held the open house had a duty to warn her of this alleged dangerous condition. The realtor was

granted a summary judgment, which was eventually reversed by the *Hopkins* court.    Underlying

the *Hopkins* court's rationale was its recognition that the ultimate disposition of the case would

hinge upon the following question:

> [W]hether a broker's duty of care in these circumstances is to be
> determined by the traditional common-law doctrine that defines the
> duty of care imposed on owners and possessors of land or, instead,
> by more general principles that govern tort liability.

*Id.* at 1112. The *Hopkins* court chose the latter approach, following the "approximately fourteen

jurisdictions [that] have completely abrogated the various categories of entrants, and thus have

also eliminated the hierarchical scheme defining a landowner's duty towards persons who come

on their land." *Id.* at 1115. The *Hopkins* court held that a broker is under a duty to conduct a

"reasonable broker's inspection" which would impose upon the broker "the duty to warn of any

such discoverable physical features or conditions of the property that pose a hazard or danger to

such visitors." *Id.* at 1119. The *Hopkins* court reasoned that "to focus on the status of an injured

7

party as a trespasser, licensee or invitee in order to determine the question of whether a

landowner had a duty of care, is contrary to our modern social mores and humanitarian values."

*Id.* (*citing Rowland v. Christian,* 443 P.2d 561, 656-68 (Cal. 1968)).

The well-reasoned dissent pointed out the problems inherent in the *Hopkins* court's

holding. The dissent first noted that the *Hopkins* decision essentially transformed real estate

brokers into home inspectors, but failed to provide any guidelines to brokers to aid them in

meeting their new duties, explaining:

> Consider the inevitable vagueness and impracticality of the
> majority's decision. How can a broker know what constitutes a
> dangerous condition?....Must a broker arrive at the site early,
> inspect the premises and then post warning signs on all steps,
> low ceilings, railings, hanging plants, newly-waxed floors, and
> other potential dangerous conditions? Must the broker tidy up
> the house and pick up errant skateboards or banana peels? Or
> must the broker escort people who might prefer to look at the
> home without an eager salesperson hovering around, so that the
> broker can point out all potential safety hazards? Or should the
> broker greet the potential purchasers at the door with a list of
> conceivable hazards?

*Id.* at 1123.

In addition, the dissent argued that there appeared to be little public interest in the

majority's proposed solution, as, at the time of the *Hopkins* decision, no common-law authority

existed in New Jersey or in forty-eight other states for the imposed liability, and the only state

that had imposed this broker liability, Washington, had done so when a broker had admitted that

he had possession and control of the premises and the prospective buyer had been injured while

"roaming escorted through an active construction site." *Id.* at 1124; *Jarr v. Seeco Construction,*

666 P.2d 392 (Wash.App.1983).

8

Finally, the dissent correctly pointed out that the majority's decision did nothing to further the two goals of tort law: (1) making an injured plaintiff whole, and (2) deterrence. As the dissent recognized, a plaintiff who is injured while touring a property at an open house already has recourse against the property owner or manager, as well as any party that may have caused the dangerous condition; adding more defendants does nothing except increase litigation costs. *Id.* The dissent concluded:

> Because of the newly-created duty to inspect and warn, brokers forced to defray the cost of the additional liability insurance will simply add costs to the commission. Moreover, as the majority recognizes, the broker still would retain the right of either contribution or indemnification from the homeowner. Thus, in the end, the homeowner will pay even more to insure against injuries that might occur in the home, while the brokers will have no more incentive to inspect and warn than they did before today's decision.
> In addition, the smart homeowner, saddled with new costs, will simply increase the asking price for the house. Therefore, the potential buyer will have to pay more for a house, which has had costs added to the purchase price, all in the name of the buyer's protection.
> Rather than serving the public, the majority's decision will add extra layers of litigation, paperwork, and cost to the already complex and expensive process of selling and buying a house.

*Id.*

The wisdom of the *Hopkins* dissent was recently recognized by the Indiana Court of Appeals in *Masick v. McColly Realtors, Inc.*, 858 N.E.2d 682 (Ind.App.2006). *Masick*, like *Hopkins*, involved facts surprisingly similar to those at hand. In *Masick*, the plaintiff was visiting a house that was listed for sale by the defendant realtor, and was still under construction. The plaintiff fell on a temporary step and was injured, and brought suit against the listing realtor, among other parties. The trial court granted summary judgment to the defendant realtor, and the plaintiff appealed. In determining what duty, if any, was owed to invitees by the defendant

9

realtor, the *Masick* court discussed the *Hopkins* majority's reasoning, but refused to adopt it. The

*Masick* court recognized that the *Hopkins* decision had been based upon the elimination of

common-law boundaries between premises-liability classifications of trespasser, licensee or

invitee, and that Indiana had not yet abandoned these common-law principles. *Id.* at 688. The

*Masick* court instead agreed with the *Hopkins* dissent, and declined to impose a duty upon real

estate brokers to inspect a property and to warn prospective purchasers of any defects that may be

found in the course of the inspection, stating, "[W]e decline to impose such a duty on real estate

brokers who do not have sufficient control over the premises to independently give rise to a duty

to warn under recognized premises liability." *Id.* at 691. The *Masick* court explained that a real

estate broker did not have sufficient possession and control of a property such that a duty to

inspect and warn would be imposed simply because he had the right to enter the property in order

to sell it unless the broker had a contractual duty to the owner to keep the premises in repair. *Id.*

at 688 (*citing Christopher v. McGuire*, 169 P.2d 879, 880-81 (Or. 1946)). It should be noted

here that, although the *Masick* court refused to impose a duty upon brokers to inspect a property

and warn invitees of dangerous conditions found in said inspection, it held that brokers do have a

duty to warn of hidden defects of which the broker has actual knowledge.

Courts in other jurisdictions have refused to even impose this limited duty upon real

estate brokers that have listed properties for sale. Again, these jurisdictions have retained the

traditional common-law premises liability distinctions previously mentioned and have declined

to impose new duties upon real estate brokers that have not "possessed or controlled" a premises.

For example, in *White v. Rick Canup Realtors, Inc.*, 2000 WL 621263 (Tex.App-

Amarillo)(attached hereto as Exhibit B), the plaintiff brought an action against a listing broker

when she was injured while a real estate agent was giving the plaintiff a tour of a house for sale. The trial court granted summary judgment in favor of the listing broker, and the plaintiff appealed. The appellate court noted that, under Texas law, a defendant's duty to protect a plaintiff from premises defects only arises from his control or ownership of those premises, and the duty does not extend beyond those limits. *Id.* at *3. The *White* court, citing the Restatement (Second) of Torts, §328E, explained that a party "controls a premises if he is a 'possessor and: (a) is in occupation of the land with intent to control it, (b) has been in occupation of the land with intent to control it, if no other person has subsequently occupied it with intent to control it, or (c) is entitled to immediate occupation of the land, if no other person is in possession under clauses a and b.'" *Id.* The defendant real estate broker argued that, by simply listing the property for sale, it did not exercise the requisite control, and that "the duty owed by a landowner/occupier to invitees simply does not transfer through a chain of real estate agents." *Id.* The *White* court agreed with the defendant's argument, and held that a listing agent has no duty to inspect property in order to discover defects. *Id. See also Meyer v. Tyner*, 273 A.2d 364 (N.Y.A.D.2 Dept 2000)(finding that listing real estate agents could not be held liable for injuries sustained by plaintiff who was touring a house for sale where agents did not own, occupy, control, or make a special use of the subject premises.)

In the case at hand, it must first be noted that Delaware still adheres to the traditional common-law distinctions regarding premises liability classifications. *See generally Rhudy v. Bottlecaps*, 830 A.2d 402 (Del. 2003); *Argoe v. Commercial Square Apartments LP*, 745 A.2d 251 (Del.Super.1999). Thus, the stated rationale underlying the *Hopkins* majority's decision imposing a duty on real estate brokers is at direct odds with prior Delaware case law that has

11

recognized the distinction among trespassers, licensees, and invitees. Put another way, a ruling that imposed a duty upon a listing real estate broker to inspect a premises and warn invitees of any defects contained therein would contravene the traditional common law approach that has long been accepted by Delaware courts.

Furthermore, there is no evidence that Resort "possessed" and "controlled" the Property such that the duty traditionally imposed upon a property owner should be applied to it. The District Court of Delaware has previously adopted the Restatement (Second) of Torts, §328E definition of a "possessor" of land. *See Hailed v. Dundee, Inc.*, 272 F.Supp. 1, 7 (D.C.Del. 1967). Resort never exercised any control over the property as defined by the Restatement (Second) of Torts and set forth in the *White* decision: Resort was never in occupation of the land with intent to control it, and was never entitled to immediate occupation of the Property. In fact, Resort's rights with regard to the Property were solely derived from the Listing Agreement, which granted Resort the right to place "For sale" signs and a lockbox on the property, but gave Resort no other possessory interest in the property. *See Exclusive Listing Agreement between Defendant Remax Realty Group and CHD Associates*; *see also Argoe v. Commerce Square Apartments Ltd.*, 745 A.2d 251 (Del.Super.1999) In short, the only rights Resort had with respect to the Property were those required to list it for sale; these limited rights are not enough to elevate Resort's status to that of a possessor and controller of the Property. In addition Resort had no contractual obligation to inspect the Property, or to repair defects. Accordingly, Resort had no duty, as a matter of law, to inspect the Property and/or warn invitees of potentially dangerous conditions.

3.    **Resort had no actual knowledge of any hidden defects on the Property**.

Even if the Court follows the portion of the *Masick* decision that imposed a duty upon brokers to disclose *known* hidden defects, Resort is still entitled to summary judgment. Assuming, as the Court must for purposes of this motion, that the paver step was defective, there is no evidence that Resort had any actual knowledge that the paver step was defective. As discussed, *supra*, Resort was not involved in the design, construction, management, or maintenance of the property. Nor did Resort participate in the selection or design of the paver step at issue in this action. Most importantly, the Property, including the paver step on Unit 5, passed the building inspection conducted by Sussex County as evidenced by the certificate of occupancy issued for the Property prior to the open house. In other words, Resort had no knowledge that the step was defective, and, thus, had no duty to disclose the allegedly defective condition of the step to the plaintiff.

## CONCLUSION

For the foregoing reasons, Defendant Resort Realty Group, Inc. respectfully requests this Court to grant summary judgment in its favor and to award such other relief as is just and proper.

FERRY, JOSEPH & PEARCE, P.A.

/s/Robert K. Pearce
ROBERT K. PEARCE, ESQ. (I.D. No. 191)
THOMAS R. RIGGS, ESQ. (I.D. No. 4631)
824 Market Street, Suite 904
Wilmington, DE 19899
(302) 575-1555
rpearce@ferryjoseph.com
Attorneys for Defendant
Resort Realty Group, Inc.

Dated: June 21, 2007

13

# EXHIBIT
# A

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SANDRA E. FLUCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C. A. No. 06-188-GMS |
| v. | ) |
| | ) |
| BELLA VISTA DEVELOPMENT, LLC, | ) |
| a Virginia corporation, BELLA VISTA | ) TRIAL BY A JURY DEMANDED |
| TOWNHOME CONDOMINIUM | ) |
| ASSOCIATION, INC., a Delaware | ) |
| Corporation, RESORT REALTY GROUP, | ) |
| INC., a Delaware corporation, WILLIAM J. | ) |
| MITCHELL, individually, and WAYNE | ) |
| MITCHELL, individually, | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF ROBERT REED

STATE OF MAINE      :

Knox ~~COUNTY~~ COUNTY      :ss

     :

Robert Reed, having been duly sworn, does hereby depose and state:

1. I am the president of Defendant Resort Realty Group, Inc., a Delaware corporation.

2. Defendants William J. Mitchell and Wayne Mitchell (collectively, the "Mitchells") are independent real estate agents and are not employees of Defendant Resort Realty Group, Inc.

3. The Mitchells scheduled an "open house" held at Bella Vista Townhome and Condominium Development on June 27, 2004.

4. Defendant Resort Realty Group, Inc. was the listing broker for the aforementioned "open house," but otherwise did not participate in the organization, planning, or management of the "open house."

5. Defendant Resort Realty Group, Inc. did not build, construct, manage, or in any other way maintain Bella Vista Townhome and Condominium Development.

6. Defendant Resort Realty Group, Inc. never agreed to inspect Bella Vista Townhome and Condominium Development prior to the open house, or to keep said premises in repair.

ROBERT REED

SWORN TO AND SUBSCRIBED before me this 19th day of June, 2007.

Notary Public

BONNIE ANITA VARNEY
Notary Public • State of Maine
My Commission Expires 10/05/2013

# EXHIBIT
# B



Not Reported in S.W.3d                                                        Page 1

Not Reported in S.W.3d, 2000 WL 621263 (Tex.App.-Amarillo)
**(Cite as: Not Reported in S.W.3d)**

White v. Rick Canup Realtors, Inc.
Tex.App.-Amarillo,2000.
Only the Westlaw citation is currently available.
NOTICE: NOT DESIGNATED FOR
PUBLICATION. UNDER TX R RAP RULE 47.7,
UNPUBLISHED OPINIONS HAVE NO
PRECEDENTIAL VALUE BUT MAY BE CITED
WITH THE NOTATION "(not designated for
publication)."
Court of Appeals of Texas, Amarillo.
Betty WHITE and David White, Appellants,
v.
RICK CANUP REALTORS, INC. d/b/a Coldwell
Bankers Rick Canup Realtors and Margaret
Williams Realtors, Inc., d/b/a McDougal Realtors
and Marilyn Parramore, Appellees.
**No. 07-99-0381-CV.**

May 15, 2000.

From the 137th District Court of Lubbock County,
No. 98-503,552; Cecil G. Puryear, Judge.

Before BOYD, C.J., and QUINN and REAVIS, JJ.
BOYD.
*1 Appellants Betty and David White challenge a
take-nothing summary judgment in favor of
appellees Rick Canup Realtors, Inc. d/b/a Coldwell
Banker Rick Canup Realtors, Margaret Williams
Realtors, Inc ., d/b/a McDougal Realtors, Inc., and
Marilyn Parramore (a McDougal real estate agent)
[hereinafter Canup].[FN1] In asserting their
challenge, the Whites raise three points of error,
claiming that 1) Canup owed a duty to the Whites,
even though Canup was not their agent, 2) Canup
did not inspect the property or warn them about
dangerous conditions on the property, and 3) a fact
question existed as to whether Betty's injuries were
proximately caused by Canup's failure to use
reasonable care. Disagreeing that reversal is
required, we affirm the judgment of the trial court.

FN1. For the sake of simplicity, we will
refer to appellees generically. Under our
analysis, the difference between the two
parties is one without a distinction.

Rule of Civil Procedure 166a(i) permits the filing of
a "no-evidence" summary judgment motion where
there is no evidence of one or more essential
elements of a claim or defense upon which an
adverse party has the burden of proof. Tex.R.Civ.P.
166a(i) (Vernon Pamph.2000). Because a
no-evidence summary judgment is essentially a
pretrial directed verdict, we apply the same legal
sufficiency standard to both. *Roth v. FFP Operating
Partners, L.P ., 994 S.W.2d 190, 194
(Tex.App.-Amarillo 1999, writ denied). That is, we
must determine whether the non-movant produced
any evidence of probative force to raise a fact issue
on material questions. We consider all the evidence
in the light most favorable to the party against
whom summary judgment was rendered, and we
must do so while disregarding all contrary evidence
and inferences. *Id.* If the non-movant presents more
than a scintilla of probative evidence, summary
judgment should not have been granted. *Id.* More
than a scintilla of evidence exists when the evidence
rises to a level such that reasonable and fair-minded
people could differ in their conclusions. *Id.*
Alternatively, less than a scintilla of evidence exists
when the evidence does no more than create a mere
suspicion of a fact. *Kindred v. Con/Chem, Inc.,* 650
S.W.2d 61, 63 (Tex.1983).

The elements of a common law negligence action
are 1) a legal duty owed by a defendant to a
plaintiff, 2) breach of that duty, and 3) damages
proximately resulting from the breach. *Roth,* 994
S.W.2d at 195. The determination of duty is a
question of law. *Id.* Because the Whites complain
that Canup was negligent in failing to comply with
its duty of care, our initial task is to determine what
duty, if any, Canup owed to the Whites. A brief
recitation of the facts is thus necessary to our
discussion.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in S.W.3d, 2000 WL 621263 (Tex.App.-Amarillo)
**(Cite as: Not Reported in S.W.3d)**

On May 24, 1995, Parramore, in the course of her employment, showed Betty White and her son a rural Idalou residence. To gain entry, Parramore intended to access the key from a lock box on the property. However, the lock box was not located on the front door. As a result, Parramore walked to the back of the property to see if the lock box was there or, alternatively, if she could find a way into the house. After waiting for several minutes, White decided to follow. In making her way toward the back, White encountered a wooden and steel twin door gate. The gate had no handles, no signs, no instructions as to open it, and was unsecured on one side. White pulled one side of the gate open and, as she did so, the other side of the gate shut. As the gate closed, White's right ankle was caught between the gate sides. Parramore then took White to a Lubbock hospital, where it was determined that she had a broken ankle, and torn ligaments and tendons.

*2 At the time of the incident, the property was owned by David Arthur Bradshaw, was listed for sale through Rick Canup Realtors, and was shown by Parramore, a McDougal employee. As a result of her injuries, White filed the underlying suit against all concerned which gave rise to the summary judgment being appealed.

In their first issue, the Whites argue that Canup was Bradshaw's agent and, as such, owed White a duty to protect her from unsafe conditions on the land because she was an invitee on the property. They reason that "[r]eal estate agents owe a duty to persons they bring onto property." That argument is derived from article 6573a § 15C(c) of the Revised Civil Statutes, which provides that a licensed real estate salesman or broker who is representing a party to a real estate transaction is that party's agent. Tex.Civ.Stat.Ann. art. 6573a § 15C(c) (Vernon 2000). Although the Whites do not cite any Texas authority for that position, they do cite and rely upon four out-of-state decisions which, they say, support that position.

In *Hopkins v. Fox & Lazo Realtors,* 625 A.2d 1110 (N.J.1993), the New Jersey Supreme Court addressed a broker's duty of care, specifically, whether that duty is the same as is imposed upon owners and possessors, or whether it is determined by general tort principles. The New Jersey court held that in the context of an open house, the relationship between a real estate broker and a potential buyer is substantial. *Hopkins,* 625 A.2d at 1117. Based upon that holding, the court determined that "a broker is under a duty to conduct a reasonable broker's inspection when such an inspection would comport with the customary standards governing the responsibilities and functions of real-estate brokers with respect to open-house tours." *Id.* at 1118. Thus, in limiting the duty to open houses, the court required a broker to conduct a reasonable inspection when such an inspection would be undertaken by a reasonable broker attempting to sell the house, and only when the broker had a reasonable opportunity to inspect the house. *Id.* at 1120.

In *Coughlin v. Harland L. Weaver, Inc.,* 230 P.2d 141, 144 (Cal.App.-2nd Dist.1951), the court recognized a realtor's duty to take reasonable care to discover the condition of the premises, and either make them safe or warn invitees of the dangerous conditions. The Whites rely upon this case as establishing the proposition that brokers are in possession of the property which they contract to sell or rent for the owner.

In *Jarr v. Seeco Construction Co.,* 666 P.2d 392, 393-94 (Wash .App.-Division 1 1983), the court held that "[a] possessor of land owes a duty of reasonable care for invitees with respect to dangerous conditions on the land, including 'an affirmative duty to discover dangerous conditions.' " Finally, in *Turner v. Carneal,* 150 S.E. 72, 74 (Va.1931), the appellate court held that the trial court's jury charge which stated a realtor is liable for injuries to prospective purchasers or tenants if that realtor is negligent while visiting the property was correct.

*3 Under the applicable standard of review, we must determine if the Whites presented more than a scintilla of probative evidence sufficient to raise a material fact question on the issue of duty. *Roth,* 994 S.W.2d at 195. Although out-of-state authority might be persuasive, this court is only bound by decisions of our court of last resort. As long ago as 1938, in *Gropotte v. Adams,* 111 S.W .2d 690, 691

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in S.W.3d

Not Reported in S.W.3d, 2000 WL 621263 (Tex.App.-Amarillo)
**(Cite as: Not Reported in S.W.3d)**

(Tex.1938), our supreme court held that a defendant's duty to protect a plaintiff from premises defects arises only from his control or ownership of those premises, and the duty does not extend beyond those limits. *See also LaFleur v. Astrodome Astrohall Stadium Corporation,* 751 S.W.2d 563, 565 (Tex.App.-Houston [1st Dist.] 1988, no writ).

As Canup correctly notes, the existence of a duty is a threshold inquiry in any negligence case. *Isbell v. Ryan,* 983 S.W.2d 335, 339 (Tex.App.-Houston [14th Dist.] 1998, no writ). While an owner or occupier of land owes a duty to invitees to exercise ordinary care to protect them from risks of which the owner is aware or should be aware after reasonable inspection, *Motel 6 G.P., Inc. v. Lopez,* 929 S.W.2d 1, 3 (Tex.1996), the duty only arises for an "occupier" who has control of the premises. *Gunn v. Harris Methodist Affiliated Hospitals,* 887 S.W.2d 248, 251 (Tex.App.-Fort Worth 1994, writ denied). A party controls a premises if he is a "possessor" and: (a) is in occupation of the land with intent to control it, (b) has been in occupation of the land with intent to control it, if no other person has subsequently occupied it with intent to control it, or (c) is entitled to immediate occupation of the land, if no other person is in possession under clauses a and b. *Gunn,* 887 S.W.2d at 251 (quoting Restatement (Second) of Torts, § 328E). Canup argues that it did not exercise the requisite "control" over the property, and posits that "the duty owed by a landowner/occupier to invitees simply does not transfer through a chain of real estate agents."

In *Kubinsky v. Van Zandt Realtors,* 811 S.W.2d 711 (Tex.App.-Fort Worth 1991, writ denied), the court addressed an issue concerning a realtor's liability to prospective buyers. In that case, the appellants bought a house which they later discovered had foundation problems. Before the purchase, the appellants' inspector noted there was "[e]vidence of minor [foundation] movement noted on East Side of House. No major movement noted at this time." Later, the appellants found out that the previous owners had done extensive foundation work on the house about three months before they sold it. In their suit, the appellants sought to hold the listing realtors responsible, which presented a question for the court as to whether a listing agent has a legal

duty to inspect the listed property for defects, aside from merely asking the sellers if defects exist. Declining to follow California authority cited by the appellants, the Fort Worth court held that a real estate agent has no duty to inspect property in order to discover defects. *Id.* at 715.

**\*4** Considering the above authority, we hold the trial court did not err in concluding that Canup owed them a duty. The Whites' first issue is overruled.

Because resolution of this issue is dispositive of the appeal, a discussion of the Whites' remaining two issues is unnecessary. Accordingly, the judgment of the trial court is affirmed.

Tex.App.-Amarillo,2000.
White v. Rick Canup Realtors, Inc.
Not Reported in S.W.3d, 2000 WL 621263 (Tex.App.-Amarillo)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Robert K. Pearce, Esquire do hereby certify that on June 21, 2007 I electronically filed the foregoing *Defendant Resort Realty Group, Inc.'s Opening Brief in Support of its Motion for Summary Judgment* and *Appendix to Defendant Resort Realty Group, Inc.'s Opening Brief in Support of its Motion for Summary Judgment* with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Jennifer S. Donahue, Esquire
Andrea G. Green, Esquire
Doroshow, Pasquale, Krawitz & Bhaya
213 E. DuPont Highway
Millsboro, DE 19966

Stephen P. Casarino, Esquire
Casarino, Christman & Shalk, P.A.
800 N. King Street
Wilmington, DE 19801

Roger A. Akin, Esquire
Akin & Herron, P.A.
1500 Shallcross Avenue
Suite 1-A
Wilmington, DE 19806

Carol J. Antoff, Esquire
Christiana Executive Campus
131 Continental Drive, Suite 407
Newark, DE 19713

/s/Robert K. Pearce
ROBERT K. PEARCE, ESQUIRE
I.D. No. 191

Dated: June 21, 2007