IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SANDRA E. FLUCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C. A. No. 06-188-GMS |
| v. | ) | |
| | ) | |
| BELLA VISTA DEVELOPMENT, LLC, | ) | |
| a Virginia corporation, BELLA VISTA | ) | TRIAL BY A JURY DEMANDED |
| TOWNHOME CONDOMINIUM | ) | |
| ASSOCIATION, INC., a Delaware | ) | |
| Corporation, RESORT REALTY GROUP, | ) | |
| INC.,a Delaware corporation, WILLIAM J. | ) | |
| MITCHELL, individually, and WAYNE | ) | |
| MITCHELL, individually, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT RESORT REALTY GROUP, INC.'S REPLY BRIEF IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

FERRY, JOSEPH & PEARCE, P.A.

/s/Robert K. Pearce
ROBERT K. PEARCE, ESQ. (I.D. No. 191)
THOMAS R. RIGGS, ESQ. (I.D. No. 4631)
824 Market Street, Suite 904
Wilmington, DE 19899
(302) 575-1555
rpearce@ferryjoseph.com
Attorneys for Defendant
Resort Realty Group, Inc.

Dated: July 16, 2007

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| ARGUMENT | | 1 |
| | 1. Delaware did not adopt the *Hopkins* decision in *Johnson v. Chupp* | 1 |
| | 2. Resort was not a "possessor" of the Property. | 1 |
| | 3. Resort had no knowledge of hidden defects | 5 |
| CONCLUSION | | 6 |

# TABLE OF AUTHORITIES

**Cases:**

*Coughlin v. Weaver*, 103 Cal.App.2d 602 (Cal.Dist.Ct.App. 1951) ........................ 2

*Desmond v. Lucks*, 1989 WL 64065 (Del.Super.) ................................. 4

*Fisher v. Townsends, Inc.* 695 A.2d 53, 58 (Del.1997). ............................ 3

*Hollett v. Dundee, Inc.*, 272 F.Supp. 1, 7 (D.C.Del. 1967) ......................... 3

*Jarr v. Seeco Const. Co.*, 666 P.2d 392 (Wash.App. 1983) ........................ 2

*Johnson v. Chupp*, 2003 WL 292168 (Del.Super.) . ............................. 1

*Masick v. McColly Realtors, Inc.*, 858 N.E.2d 682 (Ind.App.2006) ................. 2

**Other Sources:**

Restatement (Second) of Torts, §5 ........................................... 4

Restatement (Second) of Torts, §328 ......................................... 3

Restatement (Second) of Torts, §406 ......................................... 4

Restatement (Second) of Torts, §409 ......................................... 3

## ARGUMENT

### 1. Delaware did not adopt the *Hopkins* decision in *Johnson v. Chupp*.

In Plaintiff's Answering Brief in Opposition to Defendant Resort Realty Group, Inc.'s Motion for Summary Judgment ("Answering Brief"), she agrees that, as noted by Defendant Resort Realty Group, Inc. ("Resort") in its Opening Brief in Support of its Motion for Summary Judgment ("Opening Brief"), the Delaware Superior Court's decision in *Johnson v. Chupp*, 2003 WL 292168 (Del.Super.) is not directly on point, and offers little guidance on the issue at hand. Nevertheless, Plaintiff places undue emphasis on the reasoning of the *Chupp* court. For example, Plaintiff asserts that the *Chupp* court "cited, without criticism," the *Hopkins* decision that imposed a duty upon a listing broker to inspect a property prior to holding an open house and to warn invitees of any dangers contained therein. However, the *Chupp* Court did not rely upon the *Hopkins* decision in making its decision, and simply pointed out that the facts in *Hopkins* were not analogous to those before it; given these circumstances, it is not surprising that the *Chupp* court did not offer additional commentary on the *Hopkins* decision, either positive or negative. The undisputed fact is that the *Chupp* decision is distinguishable and simply does not support Plaintiff's position that a listing agent has a duty to inspect the property for a hidden defect before conducting an open house.

### 2. Resort was not a "possessor" of the Property.

In her Answering Brief, Plaintiff recognizes that the *Hopkins* court advocated abandonment of the common law system for property owner liability. Plaintiff argues that, even if this Court refuses to follow *Hopkins* in abandoning these long-standing common law

1

principles, this Court should still find that Resort had a duty to inspect the Property and warn of any dangers since Resort was purportedly a "possessor" of the Property. At the very least, Plaintiff argues, there is a factual question regarding whether Resort was a "possessor," so summary judgment is inappropriate in this case. As will be discussed more fully, there is no evidence on record that Resort was a possessor of the Property such that it had a common-law duty to inspect and warn invitees of dangers.

Plaintiff unduly relies upon *Jarr v. Seeco Const. Co.*, 666 P.2d 392 (Wash.App. 1983) in arguing that there is a factual question regarding whether Resort was a "possessor" of the Property. The *Jarr* court held, "A realtor contracting with the owner of real estate to show unfinished property to prospective purchasers has a duty, where the owner of the property is absent and has not acted, to provide for the safety of invitees on the property being shown." *Id.* at 396. The *Jarr* court held that Terrace, the listing broker, was a possessor and owed a duty to invitees. However, in *Jarr*, there was no question that Terrace was a "possessor" since it admitted as much at oral argument. *Id.* at 395. In the case at bar, Resort has made no such admission, and, as discussed in Resort's Opening Brief, never exercised the requisite control necessary to be considered a possessor of the Property.

Plaintiff also relies upon *Coughlin v. Weaver*, 103 Cal.App.2d 602 (Cal.Dist.Ct.App. 1951) which found that a real estate broker that contracted to show a property was a possessor of the property. The *Coughlin* court offered little analysis of the broker's status as a possessor that is helpful in the instant case. Moreover, later courts have declined to follow the *Coughlin* decision. *See Masick v. McColly Realtors, Inc.*, 858 N.E.2d 682 (Ind.App.2006).

Both Plaintiff and Resort apparently agree that the applicable definition of a possessor of

2

land is provided by the Restatement (Second) of Torts, §328E, defining such as "one who is in occupation of the land with intent to control it." As discussed in Resort's Opening Brief, there is simply no evidence on record to support a finding that Resort was a possessor of the Property as contemplated by the Restatement. In contending that Resort was, in fact, a possessor of the Property, Plaintiff relies upon the rule that "an independent contractor who works on the land with the authority of the possessor is acting on behalf of the possessor." D.I. 83, p.14, citing *Hollett v. Dundee, Inc.*, 272 F.Supp. 1, 8 (D.Del.1967). However, as will be explained, Plaintiff misapplies this principle in leaping to the conclusion that all of the actions of Wayne and William Mitchell should be imputed to Resort.

It is undisputed that the Mitchells were independent contractors, as opposed to employees of Resort. Thus, contrary to Plaintiff's assertions, no actions taken by the Mitchells may be imputed to Resort. *See Fisher v. Townsends, Inc.*, 695 A.2d 53, 58 (Del.1997)(stating, "an owner or contractee will not be held liable for the torts of an independent contractor which are committed in the performance of the contracted work."); *see also* Restatement (Second) of Torts, §409 (stating, generally, "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants."). This should be the end of the inquiry, as there is no evidence that Resort, independent of the Mitchells' actions, exercised any control over the Property whatsoever. As such, Resort could not possibly be considered a possessor of the Property. However, as set forth in Resort's Opening Brief, and as will be discussed more fully herein, even if the Mitchells' actions could be imputed to Resort through agency principles, Resort was not a possessor of the property as a matter of law, and, therefore, owed no duty to inspect the Property prior to the open house.

3

As previously discussed in Resort's Opening Brief, the only rights granted to Resort by the owners were outlined in the listing contract, and simply gave Resort the right to take the limited steps necessary to list and advertise the Property for sale. As such, Resort was acting as an agent of the owner. As an agent, Resort arguably had the ability to delegate some of the authority that had been conferred upon it to a subagent. *See* Restatement (Second) of Torts, §5. However, for the sake of argument, even if Resort had delegated some of its authority to the Mitchells as subagents, only those actions taken by the Mitchells within the scope of Resort's limited authority could be imputed to Resort. *See Desmond v. Lucks*, 1989 WL 64065, at *3 (Del.Super.)(noting, "One who delegates the power to act is responsible for what is done pursuant to that authority.")(citing Restatement (Second) of Torts, §406)(attached hereto as Exhibit A). Although there is no evidence that the Mitchells were Resort's subagents, even if they were, they could only be acting on "behalf" of Resort to the extent of Resort's authority. In other words, Resort could not delegate to the Mitchells more authority than had been conferred upon it by the owner of the Property. Thus, only those duties imposed upon, or actions taken by, the Mitchells pursuant to the rights and obligations of Resort as described in the listing agreement could be arguably imputed to Resort. Plaintiff apparently ignores this principle and argues that all of the actions taken by the Mitchells should be imputed to Resort. Specifically, she maintains that the Mitchells' actions in "placing signs and flags on the property, setting themselves up and using an office in the unit, inviting the public to tour, and escorting the public through the property" should all be imputed to Resort, and exhibited enough control over the property to make Resort a "possessor" of the Property.

With the exception of the setting up and using of an office in the unit, none of these

4

actions, even if imputed to Resort, constitute possession of the Property. Plaintiff makes much of the fact that William Mitchell testified that he was in his office in Unit 5 on the day of the incident. However, as previously discussed, Resort's rights with regard to the property were derived only from the listing agreement. Nowhere in the listing agreement is Resort permitted to set up an office on the Property. Moreover, there is no evidence on record that Resort directed, authorized, or even knew that there was an office in Unit 5 of the Property. Thus, the Mitchells' actions in allegedly setting up an office in Unit 5 exceeded any authority granted to Resort, and could only have been taken pursuant to their authority derived from the owner. In other words, Plaintiff has no factual basis to assert that the aforementioned office was opened "in the name" of Resort.

Of the remaining acts cited by Plaintiff that could arguably be imputed to Resort, as set forth more fully in Resort's Opening Brief, none exhibit the requisite control necessary to transform Resort into a possessor of the Property as defined by the Restatement. Accordingly, as a matter of law, Resort was not a "possessor" of the Property and owed no duty to inspect or warn visitors of dangerous conditions.

### 3.     Resort had no knowledge of hidden defects.

In Resorts's Opening Brief, it argued that, even if the Court concludes that Resort had a duty to warn of known, hidden defects, Resort is still entitled to summary judgment since there is no evidence on record that Resort had any knowledge of a hidden defect on the Property. In her Answering Brief, Plaintiff counters that "it can hardly be claimed that the condition complained of here [i.e. the allegedly defective step] was not an obvious one: the absence of a handrail and the presence of the small step were no doubt noticed by Resort and its independent contractors

running the open house." D.I.83, p.16. Plaintiff's argument is apparently that, since the "defective" condition of the stair was so open and obvious, Resort *must* have known about it. Of course, Plaintiff's argument is self-defeating: if the defective step was open and obvious, it could not also have been hidden. Thus, even if Resort had knowledge of the purportedly defective condition of the step, it had no duty to warn visitors since the danger was not hidden, and its only duty was to warn of hidden dangers of which it was aware.

## CONCLUSION

For the foregoing reasons, Defendant Resort Realty Group, Inc. respectfully requests this Court to grant summary judgment in its favor and to award such other relief as is just and proper.

FERRY, JOSEPH & PEARCE, P.A.

/s/Robert K. Pearce
ROBERT K. PEARCE, ESQ. (I.D. No. 191)
THOMAS R. RIGGS, ESQ. (I.D. No. 4631)
824 Market Street, Suite 904
Wilmington, DE 19899
(302) 575-1555
rpearce@ferryjoseph.com
Attorneys for Defendant
Resort Realty Group, Inc.

Dated: July 16, 2007

# EXHIBIT A

Westlaw.

Not Reported in A.2d                                                                                                    Page 1

Not Reported in A.2d, 1989 WL 64065 (Del.Super.)
(Cite as: Not Reported in A.2d)

H
Desmond v. Lucks
Del.Super.,1989.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware, Sussex County.
John S. DESMOND and Des-Steele Corporation, a
Delaware corporation, Plaintiffs
v.
William A. LUCKS and Amanda A. Lucks, Daniel
M. Hill and Stephens & Company, Inc., a Delaware
corporation, Defendants.
Submitted: March 1, 1989.
Decided: June 12, 1989.

Motion for Judgment on the Pleadings-Denied.

Constantine F. Malmberg III, Dodge & O'Brien, Dover, for plaintiffs.
John A. Sergovic, Jr., John A. Sergovic, P.A., Georgetown, for defendants Lucks.
Tempe B. Steen, Tunnel & Raysor, Georgetown, for defendants Hill and Stephens & Company, Inc.

MEMORANDUM OPINION
LEE, Judge.
*1 This case involves various claims arising from an unsuccessful attempted sale of a business and from a landlord-tenant relationship which disintegrated. Plaintiffs John S. Desmond ("Desmond") and Des-Steele Corporation ("Des-Steele") have filed suit against defendants, William A. Lucks and Amanda N. Lucks, Daniel M. Hill ("Hill") and Stephens & Company, Inc. ("Stephens"). Presently before the Court is defendants Hill and Stephens' joint motion, pursuant to Superior Court Civil Rule 12(b)(6), to dismiss the action against them for failure to state a claim upon which relief may be granted. However, because defendants argue factual allegations contained in their answers, the Court will treat this motion as one for judgment on the pleadings.

FACTS [FN1]
On or about December 1, 1983, plaintiff Desmond, as a tenant, entered into a lease agreement with defendants William A. Lucks and Amanda N. Lucks, as landlords, to rent property located at Canal Square, Lewes, Delaware. Plaintiffs occupied these premises and operated thereon a restaurant business known as "Desmonds." On or about September 9, 1986, plaintiff Des-Steele entered into an exclusive listing agreement with defendant Stephens, as broker, which provided that Stephens had the right to sell plaintiff Des-Steele's leasehold interest with all equipment, rights and privileges. The exclusive listing agreement indicated thereon that the sale was subject to the approval of transfer of the lease. Defendant William A. Lucks was the listing agent on behalf of Stephens; defendant Hill was its accepting broker. Pursuant to this listing agreement, Stephens was to receive a broker's commission in the amount of six percent of the total sales price.

On or about October 26, 1986, plaintiffs entered into a contract for sale with a prospective purchaser, and this contract contained several special terms, one of which was the following contingency:

"This Agreement is contingent upon Purchasers being able to negotiate a lease agreement with the owner of the building acceptable to both Purchasers and landlord by November 30, 1986."

Plaintiffs allege that defendants William A. Lucks and Amanda N. Lucks, as landlords, refused to negotiate a new lease with the prospective purchaser unless plaintiffs agreed to pay a "premium" of $35,000. The plaintiffs refused to make this payment, and as a result, the sale failed to take place. Plaintiffs further allege that this failure of the consummation of the sale resulted both in a loss to plaintiffs of $82,258 in sale proceeds and in an unlawful ouster of plaintiffs from the premises.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                        Page 2

Not Reported in A.2d, 1989 WL 64065 (Del.Super.)
(Cite as: Not Reported in A.2d)

Plaintiffs' claims against William and Amanda Lucks are for breach of a lease agreement (Count 4); violation of 25 *Del.C.* § 5512 [FN2] (Count 5); and injury resulting from a violation of 11 *Del.C.* § 846, which criminalizes extortion (Count 1). Plaintiffs' additional claims against William Lucks are for breach of fiduciary duty (Count 2); breach of duty to disclose pursuant to Delaware Real Estate Commission Rules and Regulations and Code of Ethics (Count 6); and false advertisement as prohibited by 6 *Del.C.* § 2532(a)(9) [FN3] (Count 7). Plaintiffs' claim against defendant Amanda Lucks alleges that defendant William Lucks was acting as Amanda Lucks' agent and in concert with her when he breached his fiduciary duties (Count 3).

*2 The plaintiffs' allegations in the complaint against defendants Stephens and Hill are set forth below verbatim:

"10. On or about the 9th day of September 1986, Plaintiffs entered into a listing agreement (the Listing Agreement) with Defendant Stephens & Company, Inc., a Delaware corporation, a copy of which is attached hereto as Exhibit "B" and incorporated herein by reference.

11. Defendant, William A. Lucks, was the listing agent on behalf of Stephens & Company, Inc., a Delaware corporation and Defendant, Daniel M. Hill, was the accepting Broker on behalf of Stephens & Company, Inc., a Delaware corporation, of the aforementioned listing agreement.

12. At all times pertinent hereto, Defendant William A. Lucks was acting as an agent of, and on behalf of, Daniel M. Hill and Stephens & Company, Inc., a Delaware corporation.

13. At all times pertinent hereto Defendant, Daniel M. Hill was acting as an agent of, and on behalf of defendant, Stephens & Company, Inc., a Delaware corporation."

Defendant William Lucks left Stephens' employment on December 5, 1986. Hill was merely a co-employee with Lucks; he was not Lucks' employer.

Each of the defendants have made various crossclaims and counterclaims not relevant to the pending motion. Defendants Amanda and William Lucks previously moved to strike several portions of the complaint, and in response to this motion, the Court, in a Memorandum Opinion dated April 19, 1988, held that no civil cause of action can be based on 11 *Del.C.* § 846, and dismissed the claim in Count 1 for failure to state a claim upon which relief can be granted. *Desmond v. Lucks,* Del.Super., C.A. No. 87C-AP-20, Steele, J. (August 19, 1988).

Defendants Hill and Stephens' position in their pending motion is that the only inferable theory of liability is based on respondeat superior: Stephens, the master, is liable for the acts of William Lucks, the servant. However, according to defendants Hill and Stephens, the master-servant relationship did not exist at the time of the acts out of which the injury arose because William Lucks left Stephens' employment on December 5, 1986. The defendants' alternative argument is that even if the relationship existed during the time of the wrongful conduct, Lucks' alleged conduct in attempting to extort $35,000 went beyond the scope of his employment so that even under the theory of respondeat superior, defendants Stephens or Hill cannot be liable. Defendants Stephens and Hill further attack the underlying allegations against William Lucks and contend that they are meritless and, accordingly, there are no underlying bases for vicarious liability. Defendant Hill also maintains that all his actions were as agent for Stephens, were within the scope of his authority, and were those of his principal; therefore, he should not be liable for those actions.

In dealing with the motion for judgment on the pleadings, the Court must determine whether plaintiffs' factual pleadings are sufficient at law to state a claim. *Speiser v. Baker,* Del.Ch., 525 A.2d 1001, 1006 (1987), *appeal refused,* Del.Supr., 525 A.2d 582 (1987). Inferences are to be drawn in favor of the non-moving party, and the motion should not be granted unless it appears to a reasonable certainty that plaintiffs would not be able to recover under any state of facts which could be proven. *Id.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                   Page 3

Not Reported in A.2d, 1989 WL 64065 (Del.Super.)
(Cite as: Not Reported in A.2d)

*3 Defendants Hill and Stephens have based their argument for judgment on the pleadings on a singleness of perception of the relationship involving them, William Lucks, and plaintiffs; they see their relationship only as one where plaintiffs, as third-parties, dealt with Stephens' employee, William Lucks. However, plaintiffs have alleged in their Complaint the existence of a broker-client relationship between Stephens and plaintiffs, and have attached to and incorporated in the Complaint the contract establishing this relationship. This broker-client relationship is primarily that of principal and agent. *Dorn v. Stanhope Steel, Inc.,* Pa.Super., 534 A.2d 798, 803 (1987); *Eckrich v. DiNardo,* Pa.Super., 423 A.2d 727, 729 (1980).

Plaintiffs have further alleged that Hill acted as an agent for Stephens, and William Lucks acted as an agent for Hill and Stephens. The reasonable inferences herein are that William Lucks was a **subagent** to Hill who was a **subagent** to Stephens; Stephens **delegated** to Hill its duties as a broker-**agent** to its client-principal, and Hill **delegated** these duties to William Lucks. Restatement (Second) of Agency, § 5 (1958).

It may well be that ultimately, the facts will show the agreement or understanding between plaintiffs and Stephens and/or Hill was that Stephens and/or Hill's sole duty was to appoint an agent and upon appointing William Lucks as agent, Lucks became agent to plaintiffs and not a subagent, and Stephens and/or Hill no longer were agents. Restatement (Second) Agency, § 5, Comment a (1958). The facts further may show that William Lucks was not an agent for Stephens. Questions of apparent and actual agency are ones of fact for the jury to decide. *Billops v. Magness Const. Co.,* Del.Supr., 391 A.2d 196 (1978). However, since defendants' pleadings do not evidence that the alleged wrongs occurred after the termination of the agency, or dispute the existence of an apparent agency, this Court will view, for purposes of this motion, the allegations of the Complaint in the light most favorable for plaintiffs and will consider both an actual agency and in the alternative, an apparent agency having existed at the time of the alleged wrongs.

An agent is liable for the torts or breaches of duty to the principal which a subagent might occasion. *Norton v. Poplos,* Del.Supr., 443 A.2d 1, 6 (1982) ("[O]ne who delegates the power to act is responsible for what is done pursuant to that authority."); Restatement (Second) Agency, § 406 (1958). Thus, if defendant William Lucks as subagent committed wrongs with respect to plaintiffs as principals, then defendants Hill and Stephens could be vicariously liable. *Id.* Accordingly, I now will examine the Complaint to determine whether plaintiffs have made valid claims against defendant William Lucks which would provide an underlying basis for vicarious liability.

The Court previously has ruled Count 1 does not state a claim for relief. *Desmond v. Lucks,* Del.Super., C.A. No. 87C-AP-20, Steele, J. (August 19, 1988). Counts 3, 4 and 5 are made against William and Amanda Lucks acting as landlords. No basis for respondeat superior or vicarious liability on Hill and Stephens' part exists for these claims. Count 6, based on alleged violations of the Delaware Real Estate Commission Rules and Regulations and Code of Ethics, fails to state a claim upon which relief may be granted. *Lock v. Schreppler,* Del.Super., 426 A.2d 856 (1981). Finally, Count 7, which is based on a violation of 6 *Del.C.* § 2532, fails to state a claim because the transaction involved the sale of a leasehold interest, and 6 *Del.C.* § 2532 does not apply to real estate transactions. *Stephenson v. Capano Development, Inc.,* Del.Supr., 462 A.2d 1069 (1983).

*4 The sole remaining claims are contained in Count 2 where plaintiffs allege that defendant William Lucks breached duties of loyalty, fair dealing, obedience and care, and made misrepresentations in that: Lucks suggested the contract of sale be accepted by plaintiffs and indicated the contingencies would be worked out; he attempted to obtain unauthorized profit from his position as an agent and his self-dealing; he failed to disclose his intent to self-deal and obtain a profit; he failed to exercise proper care in negotiating the contract of sale in a manner calculated to best advance the interest of plaintiffs; he failed to disclose his intent to act on behalf of Amanda N. Lucks; and he acted on behalf of Amanda N. Lucks

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 4
Not Reported in A.2d, 1989 WL 64065 (Del.Super.)
(Cite as: Not Reported in A.2d)

in a manner adverse to the interest of plaintiffs.[FN4]

Real estate brokers and salesmen are fiduciaries who are charged with full disclosure of all material facts to those who repose confidence in them. *Stella v. Delaware Real Estate Commission,* Del.Super., C.A. No. 85A-JN-9, O'Hara, J. (March 6, 1986). As a fiduciary, it is the agent's "duty in all dealings concerning or affecting the subject matter of his agency to act with the utmost good faith and loyalty for the furtherance and advancement of the interests of his principal." *Warwick v. Addicks,* Del.Super., 157 A. 205, 206 (1931). Further, an agent has a duty to disclose any conflicting interests in the transaction involving the property. *One Twenty Realty Company v. Baer,* Md.Ct.App., 272 A.2d 377 (1971); *Thompson v. Hoagland,* N.J.Super., 242 A.2d 642 (1968). See *Kelly v. Oxgrove Development Corporation,* Pa.Supr., 319 A.2d 424 (1974). Plaintiffs have alleged breaches of these duties by Lucks, which breaches, if true, would be bases for Stephens and Hill's vicarious liability by having delegated to Lucks their duties, as agents, to the plaintiffs. Although in their briefs Hill and Stephens maintain Lucks disclosed his conflicts and all wrongs, they have not, in their pleadings, shown anything to support such disclosures. The Court must infer no such disclosures until defendants show otherwise, and accordingly, must, at this time, decide this issue in plaintiffs' favor. Thus, defendants Stephens and Hill's motion for judgment on the pleadings must be denied.

I now will deal with several other theories of liability which plaintiffs have advanced. Plaintiffs allege they stated claims against Stephens and Hill as agents who failed to exercise due care, and therefore, are responsible for breaches of their subagent. A reading of the complaint evidences plaintiffs have not made such claims.

Plaintiffs also argue the theory of respondeat superior applies. If facts later establish Hill and Stephens were only agents until they appointed William Lucks as an agent, and then they no longer were agents to plaintiffs, then defendant Hill is not liable under any theory. There are no claims for negligence against him, and he merely was a co-employee with William Lucks. William Lucks' employer was Stephens, not Hill, so the theory of respondeat superior does not apply to defendant Hill.

*5 Under certain circumstances, Stephens possibly could be liable under the theory of respondeat superior. In order to be liable under the theory of respondeat superior, the following factors must be present:

"(1) [W]hether the act is one commonly done by such servants; (2) the time, place and purpose of the act; (3) whether or not the act is outside the enterprise of the master; (4) whether or not the master has reason to expect that such an act will be done; (5) the similarity in quality of the act done to the act authorized; and (6) the extent of departure from the normal method of accomplishing an authorized result."

*Draper v. Olivere Paving & Construction Co.,* Del.Supr., 181 A.2d 565, 570 (1962). Here, defendant Lucks' attempt to line his pockets is completely beyond the scope of his employment. Stephens could not foresee or expect that William Lucks would work completely against its interest and in the interest of William Lucks alone in seeking a $35,000 "premium." As explained in *A.R. Anthony & Sons v. All-State Investigation Security Agency, Inc.,* Del.Super., C.A. No. 82C-AP-18, Poppiti, J. (September 27, 1983):

"The question is whether the servant's departure from his master's business was of such a character that the master is no longer responsible for the servant's actions. If the departure is slight, then the employment relationship is not broken and the master may be found liable. *Penn Cent. Transp. Co. v. Reddick,* D.D.App., 398 A.2d 27 (1979); See also *Smith, Frolic & Detour,* 23 Colum.L.Rev. 444 (1923)."

"A master is liable for his servant's tort only if the tort was committed in furtherance of the master's business. When a servant's tortious action arises from a personal need or motivation not engendered by anything connected with the employment, the servant is outside the scope of employment and the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

https://web2.westlaw.com/print/printstream.aspx?rs=WLW7.06&destination=atp&sv=Spli...   7/16/2007

Not Reported in A.2d                                                                                                Page 5
Not Reported in A.2d, 1989 WL 64065 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

master may not be held liable. Where the employee's conduct is unprovoked, highly unusual, and outrageous the facts may be sufficient to indicate that the motive before an intentional tort was personal. When all reasonable triers of fact can only conclude that the servant's act was independent of the master's business and solely for the servant's benefit or pleasure then the master will not be held responsible for the tort. *Penn Centr. Transp. Co. v. Reddick, supra;* Prosser, on Torts, 464, 465 (4th Ed.) (1971)."

Here, defendant William Lucks' act of demanding a $35,000 premium was not a direct outgrowth of Stevens' instructions or an integral part of its business, interest or obligations. Therefore, it was not within the scope of employment, and Stephens could not be held liable under the theory of respondeat superior.

One final matter concerns plaintiffs' request in their answering brief that this Court grant them leave to amend their complaint to state claims of negligence against defendants Hill and Stephens. The plaintiffs have not filed a motion to amend, and the parties have not had an opportunity to brief the motion and argue whether the factors for allowing an amendment are present. *See Hess v. Carmine,* Del.Super., 396 A.2d 173 (1978). Accordingly, until such a motion to amend is properly before the Court and has been adequately briefed, I will not grant leave to amend.

*6 In summary, defendants Hill and Stephens' Motion for Judgment on the Pleadings is denied on the grounds that plaintiffs have stated a claim for relief based on vicarious liability due to delegation of duties pursuant to the broker-client relationship. However, plaintiffs have not stated claims against defendants Hill and Stephens based on respondeat superior and on negligence.

IT IS SO ORDERED.

FN1. The Court will set forth the facts appearing in the Complaint, and will accept the well-pled allegations contained in the Complaint as true for purposes of considering this motion for judgment on the pleadings. *Fagnani v. Integrity Finance Corporation,* Del.Super., 167 A.2d 67, 75 (1960). The Court notes that in plaintiffs' answering brief, they included a substantial amount of facts not included in the pleadings, not supported by affidavits, and not contained in any discovery. Of course, the Court will not consider or set forth these unsubstantiated facts for the purposes of this motion. *Id.*

FN2. The pertinent parts of 25 *Del.C.* § 5512 provide:
"(a) Unless otherwise agreed in writing, the tenant may sublet his premises or assign the rental agreement to another.
(b) The rental agreement may restrict the tenant's right to assign the rental agreement in any manner. The tenant's right to sublease the premises may be conditioned on obtaining the landlord's consent, which shall not be unreasonably withheld. * * * In any proceeding in which the reasonableness of the landlord's rejection shall be in issue, the burden of showing reasonableness shall be on the landlord."

FN3. In 6 *Del.C.* § 2532(a)(9), it is stated:
"(a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:

(9) Advertises goods or services with intent not to sell them as advertised."

FN4. No requirement exists that plaintiffs first seek to remedy their claims pursuant to chapter 29 of Title 24 of the Delaware Code. This chapter allows the Delaware Real Estate Commission ("Commission") only to suspend or revoke any certificate of a real estate broker for the reasons and in the manner prescribed in the chapter. *Delaware Re. Est. Com'n. v. Patterson-Schwartz & As., Inc.,* Del.Supr., 344 A.2d 242 (1975). The Commission's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                Page 6
Not Reported in A.2d, 1989 WL 64065 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

powers are strictly limited. Plaintiffs could not obtain the remedies they seek in this suit by employing chapter 29 of Title 24. Accordingly, the administrative remedy is inadequate, and plaintiffs need not initially make a claim with the Commission. *See James Julian, Inc. v. Hall,* Del.Super., 349 A.2d 750 (1975).

Del.Super.,1989.
Desmond v. Lucks
Not Reported in A.2d, 1989 WL 64065 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Robert K. Pearce, Esquire do hereby certify that on July 16, 2007 I electronically filed the foregoing *Defendant Resort Realty Group, Inc.'s Reply Brief in Support of its Motion for Summary Judgment* with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Jennifer S. Donahue, Esquire
Andrea G. Green, Esquire
Doroshow, Pasquale, Krawitz & Bhaya
213 E. DuPont Highway
Millsboro, DE 19966

Stephen P. Casarino, Esquire
Casarino, Christman & Shalk, P.A.
800 N. King Street
Wilmington, DE 19801

Roger A. Akin, Esquire
Akin & Herron, P.A.
1500 Shallcross Avenue
Suite 1-A
Wilmington, DE 19806

Carol J. Antoff, Esquire
Christiana Executive Campus
131 Continental Drive, Suite 407
Newark, DE 19713

/s/Robert K. Pearce
ROBERT K. PEARCE, ESQUIRE
I.D. No. 191

Dated: July 16, 2007