## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

SANDRA E. FLUCK, an individual,                  :        **C.A. No.: 06-188-GMS**
                                                  :
Plaintiff,                                        :
                                                  :        **JURY DEMAND**
v.                                                :
                                                  :
BELLA VISTA DEVELOPMENT, LLC, a                   :
Virginia corporation, BELLA VISTA                 :
TOWNHOME CONDOMINIUM                              :
ASSOCIATION, INC., a Delaware                     :
corporation, RESORT REALTY GROUP,                 :
INC., a Delaware corporation, WILLIAM J.          :
MITCHELL, individually, and WAYNE
MITCHELL, individually,

Defendants.

### PLAINTIFF'S RESPONSE TO DEFENDANT RESORT REALTY GROUP, INC.'S MOTION IN LIMINE

Plaintiff Sandra Fluck (Plaintiff), by and through her undersigned counsel, hereby

responds to the Defendant Resort Realty Group Inc.'s ("Defendant") Motion In Limine, which

Motion was joined in by Defendants Bella Vista Development, LLC, Wayne Mitchell and

William Mitchell.

Plaintiff respectfully refers the Court to the factual assertions and legal arguments made

in Plaintiff's Answering Brief in opposition to Defendant's Motion, filed contemporaneously

herewith and included herein by reference.

WHEREFORE, Plaintiff respectfully requests this Court to deny Defendant's Motion In

Limine.

DOROSHOW, PASQUALE, KRAWITZ & BHAYA

/s/ ANDREA G. GREEN, ESQUIRE
Attorney I.D. No.: 2487
/s/ JENNIFER S. DONAHUE, ESQUIRE
Attorney I.D. No.: 4700
213 East Dupont Highway
Millsboro, DE 19966
(302) 934-9400
Attorneys for Plaintiffs

Dated: September 13, 2007

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

SANDRA E. FLUCK, an individual,               :    **C.A. No.: 06-188-GMS**

                                                        :

Plaintiff,               :

                                                        :    **JURY DEMAND**

v.               :

                                                        :

BELLA VISTA DEVELOPMENT, LLC, a       :
Virginia corporation, BELLA VISTA            :
TOWNHOME CONDOMINIUM                  :
ASSOCIATION, INC., a Delaware              :
corporation, RESORT REALTY GROUP,        :
INC., a Delaware corporation, WILLIAM J.     :
MITCHELL, individually, and WAYNE
MITCHELL, individually,

Defendants.

## PLAINTIFF SANDRA FLUCK'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT RESORT REALTY GROUP, INC.'S MOTION IN LIMINE

DOROSHOW, PASQUALE,
KRAWITZ & BHAYA

/s/ ANDREA G. GREEN, ESQUIRE
Attorney I.D. No.: 2487
/s/ JENNIFER S. DONAHUE, ESQUIRE
Attorney I.D. No.: 4700
213 East Dupont Highway
Millsboro, DE 19966
(302) 934-9400
Attorneys for Plaintiffs

Doroshow, Pasquale,
Krawitz & Bhaya
213 E. Dupont Highway
Millsboro, Delaware 19966
302-934-9400

Dated: September 13, 2007

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ………………………………………….  ii

NATURE AND STAGE OF THE PROCEEDINGS ……………………..  1

SUMMARY OF ARGUMENT ……………………………………….  2

STATEMENT OF FACTS …………………………………………..  3

ARGUMENT ………………………………………………………...  3

    I.      Plaintiff's expert should be permitted to testify about ASTM,
            ANSI, CPSC and NFPA standards in order to establish the
            accepted safety standards in the building industry……………….  3

    II.     Testimony regarding the replacement of the paver step is
            admissible pursuant to FRE 407 as it is offered to show
            feasibility of precautionary measures ……………………………  5

CONCLUSION ……………………………………………………...  6

**Doroshow, Pasquale,
Krawitz & Bhaya**
213 E. Dupont Highway
Millsboro, Delaware 19966
302-934-9400

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Curtis v. District of Columbia,* 363 F.2d 973 (D.D.C. 1966)……………………    3, 4

*Dorsey v. Yoder Company,* 331 F. Supp. 753 (E.D. Pa. 1971)……………………..    4

*Hassan v. Stafford,* 472 F.2d 88 (3rd Cir. 1973) …………………………………    3

*Hercules Powder Co. v. DiSabatino,* 188 A.2d 529 (Del. 1963) ………………...    3, 4, 5

*Miley v. Harmony Mill Ltd. Partnership,* 826 F.Supp. 824 (D.Del. 1993) ………    5

*Smith v. Acme Markets,* 2003 WL 1858169 (Del. Super)……………………….    4, 5


### <u>Rules</u>

*Federal Rule of Evidence 407* …………………………………………………..    5

### <u>Secondary Materials</u>

*Prosser, Torts § 35, at 203 (3d ed. 1964)*…………………………………………..    3

Doroshow, Pasquale,
Krawitz & Bhaya
213 E. Dupont Highway
Millsboro, Delaware 19966
302-934-9400

## **NATURE AND STAGE OF THE PROCEEDING**

On March 20, 2006, Plaintiff Sandra Fluck filed a Complaint seeking damages from Defendant Re/Max Realty Group, among other Defendants, for personal injuries sustained on June 27, 2004. On May 8, 2006, Plaintiff filed a Motion to Amend the Complaint to add Defendant Wayne Mitchell and to remove Defendant Hoenen & Mitchell. After this Court's entry of the Order granting Plaintiff's Motion to Amend, on June 16, 2006, Plaintiff filed an Amended Complaint adding Defendant Wayne Mitchell. On August 10, 2006, Plaintiff filed a Motion for Default as to Defendants Re/Max Realty Group and William Mitchell. On August 28, 2006, Plaintiff forwarded a letter to the Court requesting a stay of the Motion for Default as Defendants Re/Max and William Mitchell requested additional time to obtain counsel. On September 12, 2006, Plaintiff formally withdrew her Motion for Default. On December 19, 2006, Plaintiff filed a stipulation to amend the amended complaint to substitute Resort Realty Group, Inc., as a Defendant in place of Re/Max Realty Group. On January 17, 2007, Plaintiff filed a second Amended Complaint naming Resort Realty Group, Inc., in place of Re/Max Realty Group. On January 31, 2007, Defendant Resort Realty Group's counsel was formally served with the second Amended Complaint. On February 20, 2007, Defendant Resort Realty Group filed a Motion to Dismiss, which is still pending. On June 21, 2007, Defendant Resort Realty Group filed a Motion for Summary Judgment, which is still pending. On September 6, 2007, Defendant Resort Realty Group filed this Motion In Limine, which Motion was joined in by Defendants Bella Vista Development, LLC, Wayne Mitchell and William Mitchell. This is Plaintiff Fluck's Response to Defendant Resort Realty Group's Motion In Limine.

Doroshow, Pasquale,
Krawitz & Bhaya
213 E. Dupont Highway
Millsboro, Delaware 19966
302-934-9400

1

## **SUMMARY OF ARGUMENT**

I.    Plaintiff's expert should be permitted to testify about ASTM,
ANSI, CPSC and NFPA standards in order to establish
the accepted safety standards in the building industry.

II.   Testimony regarding the replacement of the paver step is
admissible pursuant to FRE 407 as it is being offered to
show feasibility of precautionary measures.

## STATEMENT OF FACTS

Plaintiff incorporates herein the statement of facts as set forth in her Answering Brief in Response to Defendant Resort Realty Group's Motion for Summary Judgment.

## ARGUMENT

**I.      Plaintiff's expert should be permitted to testify about ASTM, ANSI, CPSC and NFPA standards in order to establish the accepted safety standards in the building industry.**

In <u>Curtis v. District of Columbia</u>, 363 F.2d 973 (D.C. Cir. 1966), the Court held that it was error for the trial judge to have precluded the admission of the District of Columbia building code in a suit for injuries resulting from a hinge of a vault covering projecting above the level of the sidewalk. The vault had been constructed prior to the adoption of the building code. The Court of Appeals opined that the regulation, though not violated, was evidence of a standard which the jury could consider in determining whether the defendants had exercised due care according to their respective responsibilities. <u>Id</u>. at 975. The Court noted, however, that although the evidence was admissible as relevant to the degree of care required, the regulation should have been admitted accompanied with an instruction to avoid jury confusion. <u>Ibid</u>.

In addition, the <u>Curtis</u> Court referred to Prosser, Torts § 35, at 203 (3d ed. 1964), which states that:

> ....where the statute does set up standard precautions, although only for the protection of a different class of persons, or the prevention of a distinct risk, this may be a relevant fact, having proper bearing upon the conduct of a reasonable man under the circumstances, which the jury should be permitted to consider. There is, in other words, a statutory custom, which is entitled to admission as evidence.

In <u>Hassan v. Stafford</u>, 472 F.2d 88 (3rd Cir. 1973), the Court of Appeals affirmed the district court's decision to allow Plaintiff's expert to testify that his opinion was based upon the National Fire Protection Association 101 Life Safety Code, even though this code did not apply to the property in question. The Court referred to the Delaware Supreme Court in <u>Hercules Powder Co. v. DiSabatino</u>, 188 A.2d 529 (1963), which held:

Doroshow, Pasquale,
Krawitz & Bhaya
213 E. Dupont Highway
Millsboro, Delaware 19966
302-934-9400

3

> We have no doubt but that safety codes prepared and issued by government agencies are not admissible as independent evidence to prove the truth of the statements or standards contained in them. But it has long been permissible to ask on direct as well as on cross-examination an expert witness to state the grounds of his opinions and to detail the general data which forms the basis of his opinion. The Code itself was not offered in evidence. We see nothing improper in basing the examination of an expert witness on such a recognized safety code.

Id. at 533.

In the product liability case of Dorsey v. Yoder Company, 331 F. Supp. 753 (E.D. Pa. 1971), the Court held that a Pennsylvania safety statute (General Safety Law of Pennsylvania) could be used as a factor relating to the issue of the unsafe nature of the manufacturer's product design, despite the fact that the statute itself, without violation of a regulation, created no per se duty upon the Defendant. Id. at 768 – 769.

Finally, in Smith v. Acme Markets, 2003 WL 1858169 (Del.Super.), the trial court, in denying Defendant's motion for summary judgment, permitted the testimony of Plaintiff's expert, Lawrence Dinoff, AIA, regarding ASTMF 1637, and stated that national standards are admissible, even if not adopted, as evidence of industry standards as such standards have probative value in determining the reasonableness of a party's conduct. (See case attached as Exhibit A).

In the instant case, Plaintiff's expert, Lawrence Dinoff, AIA, should be permitted to testify as to the national safety standards contained in his report in order to establish evidence of the industry safety standards. (See Dinoff report attached as Exhibit B). Furthermore, in accordance with the holdings in Curtis and Smith, the national safety standards, as outlined in Plaintiff's expert's report, should be admissible as evidence, with a limiting instruction, if necessary. Mr. Dinoff is entitled to state the grounds of his opinions and to detail the general data, which forms the basis of his opinion. Moreover, evidence of the industry standards would have probative value in determining the reasonableness of the Defendants' conduct, in

accordance with <u>Smith</u>. It is important to note that the NFPA-101 is a nationally accepted standard that has been adopted in Delaware.

Should this Court determine that the national safety codes, as outlined in the Dinoff report, should not be admitted as evidence, at the very minimum, Plaintiff's expert should be permitted to testify as to the safety standards contained in his report pursuant to <u>Hercules,</u> supra.

Defendant's reliance upon <u>Miley v. Harmony Mill Ltd. Partnership,</u> 826 F.Supp. 824 (D.Del. 1993) is misplaced. In that case, the Court found that to prove ordinary negligence, the Plaintiffs would have to show that the reasonable landlord does more than meet the minimum requirements of the applicable landlord-tenant code. The Court in <u>Miley</u> excluded the Plaintiff's expert since his area of expertise was limited to Pennsylvania, not Delaware. In the instant case, Plaintiff's expert is thoroughly familiar with federal, state and local building codes, including Delaware. His testimony will consist of construction and architectural safety standards in Delaware, as well as nationally recognized standards, which are the framework for the entire building industry.

**II. Testimony regarding the replacement of the paver step is admissible pursuant to FRE 407 as it is being offered to show feasibility of precautionary measures.**

As a general rule, evidence of remedial measures taken after an event allegedly causing injury or harm is not admissible to prove culpable conduct. <u>Fed.R.Evid.</u> 407. However, this rule does not require the exclusion of evidence of subsequent remedial measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measure, if controverted, or impeachment. <u>Id</u>.

Defendant Wayne Mitchell testified that he replaced the paver steps outside of Building A with concrete steps sometime between the months of May 2004 and November 2004. (See Deposition of Wayne Mitchell, page 53, attached as Exhibit C). Furthermore, he testified that he removed the paver steps outside of Building A because it would be too expensive to use those pavers in the entire development. (Deposition of Wayne Mitchell, page 51, Exhibit C).

Doroshow, Pasquale,
Krawitz & Bhaya
213 E. Dupont Highway
Millsboro, Delaware 19966
302-934-9400

Defendant Mitchell also testified that he replaced the paver steps at Building A because it did not look "right" to have concrete steps outside of the other buildings and paver steps outside of Building A. (Deposition of Wayne Mitchell, page 54, attached as Exhibit C).

The basis for the prohibition against remedial measures being introduced into evidence is to encourage parties to perform such remedial measures, thereby promoting safety. Here, Defendant Mitchell specifically testified that the changes were not remedial in nature; they were not performed to correct what the Defendants saw as a dangerous condition. It is clear that Defendant Mitchell replaced the paver steps with concrete steps solely for monetary and cosmetic purposes. As such, his actions should not be considered remedial in nature. To the contrary, Defendant Mitchell's actions show the feasibility of precautionary measures that could have been taken prior to Plaintiff's injury. As such, the evidence should be admitted.

## CONCLUSION

For the foregoing reasons, Plaintiff Sandra Fluck respectfully requests that this Court deny Defendant Resort Realty Group's Motion In Limine.

DOROSHOW, PASQUALE,
KRAWITZ & BHAYA

/s/ ANDREA G. GREEN, ESQUIRE
Attorney I.D. No.: 2487
/s/ JENNIFER S. DONAHUE, ESQUIRE
Attorney I.D. No.: 4700
213 East Dupont Highway
Millsboro, DE 19966
(302) 934-9400
Attorneys for Plaintiffs

Doroshow, Pasquale,
Krawitz & Bhaya
213 E. Dupont Highway
Millsboro, Delaware 19966
302-934-9400

Dated: September 13, 2007

# Westlaw.

Not Reported in A.2d

Not Reported in A.2d, 2003 WL 1858169 (Del.Super.)

**(Cite as: Not Reported in A.2d)**

Smith v. ACME Markets, Inc.
Del.Super.,2003.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware.
George SMITH, an individual, and Elizabeth Smith,
an individual, Plaintiffs,
v.
ACME MARKETS, INC., a foreign corporation,
Defendant.
**No. Civ.A.02C-7-002SCD.**

Submitted Feb. 28, 2003.
Decided April 4, 2003.

### ORDER

DEL PESCO, J.
*1 Upon consideration of defendant's Motion for
Summary Judgment, plaintiff's response thereto, and
the record in this case, it appears that:

(1) This personal injury accident arises from a trip
injury allegedly sustained by the plaintiff in an Acme
Store on December 24, 2002.

(2) The plaintiff was wearing hiking boots at the time
of the incident. He allegedly tripped on a steel cover
for under floor electrical service conduits which was
about 1/8 above the floor surface. He claims an injury
to his foot.

(3) The defendant has filed a motion for summary
judgment. A motion for summary judgment may only
be granted where there are no genuine issues of
material fact and the moving party is entitled to
judgment as a matter of law. [FN1] In evaluating
motions for summary judgment, the court must
examine all pleadings, affidavits and discovery
material.[FN2]

> FN1. *See Schueler v. Martin,* 674 A.2d 883,
> 885 (Del.Super.1996); *Pierce v.*
> *International Ins. Co. of Ill.,* 671 A.2d 1361,
> 1363 (Del.1996); *Moore v. Sizemore,* 405
> A.2d 679, 680 (Del.1979).

> FN2. *See Oliver B. Cannon & Sons, Inc. v.*
> *Dorr-Oliver,  Inc.,*  312  A.2d  322
> (Del.Super.1973).

(4) The defendant argues that the storekeeper has a
duty to keep his property in a " reasonably safe
condition." [FN3] Defendant asserts that the plaintiff
has failed to make a showing sufficient to establish
the existence of an element essential to his case, to-
wit, negligence.[FN4] Basically, defendant asserts that a
1/8 rise in the floor attributable to the conduit cover
plate is not an unreasonable condition as a matter of
law. The Court cannot agree.

> FN3. Defendant argues the **standard** as set
> forth in *DeSabitino Bros ., Inc. v. Baio,* 366
> A.2d 508 (Del.1976), and articulated by
> Senior District Judge Latchum, in *Hess v.*
> *U.S.,* 666 F.Supp. 666, 670 (D.Del.1987):
> A possessor of property who invites others
> onto his property to conduct business must
> exercise due care to keep his property in a
> reasonably safe condition and warn of any
> unreasonable risks which he knows about, or
> with the exercise of reasonable care would
> have known about, and which the other
> would not be expected to discover for
> himself. *Hess,* 666 F.Supp. at 670.

> FN4. Def.'s Mot. Summ. J. at 4-5.

(5) Recognizing that the plaintiff has identified an
**expert** who will testify that ASTMF 1637,[FN5]
**Standard** Practice for Safe Walking Surfaces,
requires that all walking surface hardware be
maintained flush with the surrounding surface, the
defendant argues that the **testimony** does not prove
negligence because it has not been adopted by the
New Castle in its **building code.** [FN6]

> FN5. ASTM, formerly known as the
> American Society for Testing and Materials,
> was founded in 1898. " ASTM International
> is a not-for-profit organization that provides
> a global forum for the development and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 2003 WL 1858169 (Del.Super.)

**(Cite as: Not Reported in A.2d)**

publication of voluntary consensus **standards** ... In over 130 varied industry areas, ASTM **standards** serve as the basis for manufacturing, procurement, and regulatory activities." *ASTM, International* **Standards** *Worldwide, at* http://www.astm.org/cgi-bin/ SoftCart.exe/ABOUT/aboutASTM.html?L+ mystore+xfai7611+1049406106.

FN6. *Id.* The Court recognizes that Defendant received a letter from the New Castle County Executive stating " [New Castle] County has adopted over the past decade ... The BOCA **National Building Code/**1990, The BOCA **National Building Code/**1996, and the International **Building Code** 2000 [and] ASTMF 1637 is not a referenced **standard** in any of the aforementioned ..." Def.'s Mot. Summ. J. Ex. D.

(6) Violation of a **building code** provision or ordinance enacted for the safety of others would be negligence per se.<sup>FN7</sup> Plaintiff, acknowledges that the County has not adopted the **standard**, but argues that the **testimony** is evidence of negligence, and is sufficient to raise an issue of material fact.<sup>FN8</sup>

FN7. *See D'Amato v. Czajkowski,* 1995 WL 945962, *2 (Del.Super.) (citing *Sammons v. Ridgeway,* 293 A.2d 547, 549 (Del.1972); *Nance v. Rees,* 161 A.2d 795, 797 (Del.Super.1960); *Wealth v. Renai,* 114 A.2d 809, 810-11 (Del.Super.1955)).

FN8. Pl.'s Resp. Def.'s Mot. Summ. J. at 4-5.

(7) As acknowledged by plaintiff, ASTMF 1637 has not been adopted in the **building code**, and simple negligence applies. **National standards** are admissible, even if not adopted, as evidence of industry **standards**. Such **standards** have probative value in determining the reasonableness of a party's conduct. The **testimony** of plaintiff's **expert**, Mr. Dinoff, is sufficient to raise an issue of fact which precludes entry of summary judgment.

The defendant's motion is DENIED.

IT IS SO ORDERED.

Del.Super.,2003.

Smith v. ACME Markets, Inc.
Not Reported in A.2d, 2003 WL 1858169 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Robson Forensic
#### INCORPORATED

April 30, 2007

Andrea G. Green, Esq.
Doroshow Pasquale Krawitz & Bhaya
213 E. Dupont Highway
Millsboro, DE 19966
VIA FAX: 302 934 8400

Re:     Sandra Fluck fall

Dear Attorney Green:

On June 27, 2004 Sandra Fluck was viewing a model home at the Bella Vista Townhome and
Condominium development in Rehoboth Beach, Delaware. While exiting, she fell at the edge of
the unit's exterior stair to grade, and she was injured. You asked that I determine if the building
conditions were dangerous in a manner that caused Fluck's fall. I've reviewed the Amended
Complaint, Sandra Fluck's deposition and photographs of the area. I understand additional
material, including the deposition of the builder, will be gathered in the future. After reviewing
that material, I may supplement this report.


## BACKGROUND

The front door of the model unit exited onto a concrete platform which is substantially level with
the interior floor level. The platform was raised about 9" above grade and it served as the top
landing of the egress stair connecting the unit to grade. When Fluck visited this model, the
condominium project was still under construction. The exterior stair had not been completed,
and while the model was being shown, three landscaping blocks had been placed to create a
temporary two-riser stair down to grade.

Two columns flank the outer edge of the platform and define the landing width. Only three 14"
wide landscaping blocks were placed, and the temporary stair was much shorter than the
platform edge between the columns. The gap along the right edge was about 24" wide. There
were no handrails at the stair nor were there any rails, guards, planters or other means to define
and protect the parts of the platform edge where there was no stair.

Fluck was 57 years old and in good health. The weather was nice, and she was wearing shorts, a
top and boat shoe loafers. She and her companion saw a sign advertising the open model and
spent about 20 minutes viewing the unit. As they exited, her companion preceded her and
walked across the landing and down the stair. Fluck then walked across the platform and,
believing the stair extended the full width of the platform edge, she descended to the right of the

354 North Prince Street
Lancaster, PA 17603
Phone: 717.293.9050
Toll-Free: 800.813.6736
Fax: 717.293.1195
www.robsonforensic.com

platform's center. She stepped down the first riser with her left foot onto the stair tread. She intended to step down to the same tread with her right foot; however the stair didn't extend far enough. Her right foot came down unsupported, and she lost her balance. There were no handrails and she was unable to recover her balance. She fell, twisting her left foot and she was injured.

## DISCUSSION

Fluck fell because conditions at the platform led her to believe the stair was the same width as the platform edge, but it was much narrower. There were no rails, planters or other devices placed to delineate the actual safe exit width. The stair lacked handrails which, had they been present, would have unambiguously delineated the safe width of egress and would also have provided Fluck with a means to maintain her balance and avoid falling.

Short flight stairs such as the one where Fluck fell are associated with increased falls because their low height impairs the ability of users to reliably identify their presence and nature. ASTM/ANSI F1637, Standard Practice for Safe Walking Surfaces, is a nationally accepted practice for fall prevention. F1637 directs that stairs with three or fewer risers "shall be avoided where possible" and:

> In situations where a short flight stair or single step transition exists or cannot be avoided, obvious visual cues shall be provided to facilitate improved step identification. Handrails, delineated nosing edges, tactile cues, warning signs, contrast in surface colors, and accent lighting are examples of some appropriate warning cues.

In cases where owners rely on color to delineate tripping hazards, F1637 guides them to follow the national standard ANSI-Z535.1, Safety Color Coding. Z535 identifies safety yellow as the national standard color for identifying tripping hazards. There were no yellow markings where Fluck fell.

Handrails act as necessary safety equipment at stairs, and rails should have been installed at this stair. Rails delineate the location, boundaries and character of a stair, assist users to descend safely and also act as a grab bar to assist users to recover their balance when needed. Since 1978, the Consumer Product Safety Commission's Guidelines for Stair Safety cautioned:

IF:        there are no handrails on one or both sides of an interior or exterior flight of stairs, or:

THEN:    install a properly positioned guardrail, with an attached handrail, for the entire length of the flight.

Bella Vista's model was an attached single-family townhome. The National Life Safety Code, NFPA-101 is a nationally accepted standard that includes requirements for one and two-family dwellings. This stair was required to conform to:

Stairs and intermediate landings shall continue with no decrease in width along the direction of egress travel (7-2.2.3.2)

Stairs and ramps shall have handrails on both sides (7.2.2.4.2)

The <u>International Residential Code for One and Two-Family Dwellings</u> is a well established national safety standard for the design and construction of single family residences. It is also adopted by Sussex County. Section 315, Handrails, required:

Handrails... shall be provided on at least one side of stairways. All required handrails shall be continuous the full length of the stairs with two or more risers from a point directly above the top riser of a flight to a point directly above the lowest riser of a flight (R315.1).

## FINDINGS

Within the bounds of reasonable architectural certainty, and subject to change if additional information becomes available, it is my professional opinion that this stair violated applicable standards, and created a deceptive and dangerous condition that caused Fluck's fall.

If you require anything else, please let me know.

Lawrence C. Dinoff, A.I.A.

1    there.  This is '03 -- well, that is -- one is 2/25, and

2    the other one is 11/04.  You've got -- what is that?

3    Six months?

4          Q.    I think it's a little more than that.

5          A.    Yes.

6                MR. CASARINO:  Nine months.

7                THE WITNESS:  Nine months.  This is when he

8    came back.

9    BY MS. GREEN:

10         Q.    This is when who came back?

11         A.    Terra Scapes.  When we took these steps out,

12   the Terra Scapes steps -- because the price, they gave

13   us a price on what it cost us.  The three of us sat down

14   and said:  We aren't going to pay that much money.  We

15   had another 34 units to do -- or 32 units.  And I think

16   it was somewhere around $1,200 a step.  We said:  We

17   can't do that.  So he took that out, and then he put

18   these back around there.

19         Q.    Okay.  How many --

20         A.    It took ten hours at $10.38 an hour.  That's

21   just to put the pavers -- because you have to take the

22   whole thing of pavers out, and they brought them back in

23   again to match the other steps.  That's what that bill

24   is for.  That's not for the step.

Wayne Mitchell - Green

53

Q.     Okay.  Do you have it?

A.     I'm sure I can find it.  I do not have it
with me, no.

Q.     Okay.  So you agree that you could find it
and you would then provide that to your attorney to give
to me?

A.     I'll get it from them if I have to.

Q.     Okay.  So they gave you a bill for those
five sets of steps.  And did you pay for those five sets
of steps?

A.     Yes.

Q.     Do you recall how much it was?

A.     They were over a thousand dollars a piece.

Q.     And you paid that.  And then at some later
point, you decided to put in a poured concrete step?

A.     Yes.

Q.     When was that?

A.     Somewhere between that point and the time
that bill was sent out.

Q.     Okay.  So if your certificate of occupancy
was issued in mid May of 2004, sometime between May of
2004 and November of 2004, you decided to put in
concrete steps?

A.     Right.  Well, we were across the street,

Wayne Mitchell - Green

54

1  putting in the steps.  We did those first.

2          Q.    Okay.  When you say across the street, you

3  are talking about the townhomes directly across?

4          A.    Right.

5          Q.    So if you are coming out the door of, say,

6  units 5 or 6 --

7          A.    You looked across.

8          Q.    -- you looked directly across?

9          A.    Right.  And then we were looking and said:

10  Well, they don't look right.  So then we said we had to

11  change both sides.

12          Q.    Okay.  So it didn't look right to have

13  concrete steps across and the pavers on the building A?

14          A.    Yes.

15          Q.    Okay.  And who did you contract with to put

16  in the concrete steps?

17          A.    Fluharty.

18          Q.    How much did that cost you?

19          A.    I do not know.

20          Q.    Did you receive a bill?

21          A.    I'll guesstimate a couple of hundred bucks a

22  step, but I don't know that for a fact.  Yeah, I got a

23  bill somewhere.

24          Q.    Did you enter into a contract with Fluharty

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SANDRA E. FLUCK, an individual, | : | **C.A. No.: 06-188-GMS** |
| | : | |
| Plaintiff, | : | |
| | : | **JURY DEMAND** |
| v. | : | |
| | : | |
| BELLA VISTA DEVELOPMENT, LLC, a | : | |
| Virginia corporation, BELLA VISTA | : | |
| TOWNHOME CONDOMINIUM | : | |
| ASSOCIATION, INC., a Delaware | : | |
| corporation, RESORT REALTY GROUP, | : | |
| INC., a Delaware corporation, WILLIAM J. | : | |
| MITCHELL, individually, and WAYNE | | |
| MITCHELL, individually, | | |
| | | |
| Defendants. | | |

## CERTIFICATE OF SERVICE

I, Jennifer S. Donahue, Esquire, do hereby certify that on September 13, 2007, I electronically filed the Plaintiff's Response to Defendant's Motion to Dismiss with the Clerk of Court using CM/ECF which will send notification of such filing to the following person(s):

Robert K. Pearce, Esq.
Ferry, Joseph & Pearce, P.A.
824 North Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

Stephen Casarino, Esq.
Casarino, Christman & Shalk, P.A.
800 North King Street, Suite 200
P.O. Box 1276
Wilmington, DE 19899

Roger A. Akin, Esq.
1500 Shallcross Avenue, Suite 1-A
Wilmington, DE 19806

DOROSHOW, PASQUALE, KRAWITZ & BHAYA

/s/ JENNIFER S. DONAHUE, ESQUIRE
Attorney I.D. No.: 4700
213 East Dupont Highway
Millsboro, DE 19966
(302) 934-9400
Attorneys for Plaintiff